**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| AMERICAN FEDERATION INSURANCE COMPANY,<br><br>           Plaintiff,<br><br>v.<br><br>NUKA ENTERPRISES, LLC; and GEORGE TSITIRIDIS<br>           Defendants. | Case No.: |

**COMPLAINT FOR DECLARATORY JUDGMENT**

NOW COMES the Plaintiff, AMERICAN FEDERATION INSURANCE COMPANY ("AmFed") by and through their attorneys, Lewis Brisbois Bisgaard & Smith LLP, and for their Complaint for Declaratory Relief against Defendants, NUKA ENTERPRISES, LLC ("NUKA") and GEORGE TSITIRIDIS ("TSITRIDIS"), for the purpose of seeking a determination of the respective rights of the parties under insurance policies issued to NUKA for claims alleged in a Complaint at Law seeking bodily injury damages arising from the of the manufacture and distribution of products containing marijuana, state as follows:

**STATEMENT OF CASE**

1.      This is an action for declaratory judgment for the purpose of determining an actual controversy between the parties, construing the rights and legal obligations arising under two insurance contracts issued by AmFed, where NUKA is claiming coverage as a named insured. AmFed seeks a declaration from this Court that they owe no obligation under the subject policies of insurance with respect to NUKA's alleged liability for a complaint at law that is currently pending in the Circuit Court of Cook County, and styled as *George Tsitridis, individually, and on behalf of all others similarly situated v. Nuka Enterprises, LLC*, cause no. 2022CHL06258,

alleging bodily injury resulting from the manufacture and distribution of certain marijuana containing products (the "Underlying Complaint"). *See* **Underlying Complaint attached hereto and made a part hereof as Exhibit A**.

2.      AmFed received notice of the Underlying Complaint in which NUKA sought coverage for any defense fees and damages that might arise from the allegations asserted in the Underlying Complaint up to the liability limits of the policies at issue totaling $5,000,000, collectively, for each occurrence.

3.      On or about June 29, 2022, the Underlying Complaint was filed in the Circuit Court of Cook County, Illinois as a class action.

4.      On or about December 22, 2022, AmFed disclaimed coverage for the claims alleged against NUKA in the Underlying Complaint.  *See* **Disclaimer Letter attached hereto as Exhibit B**.

## THE PARTIES

5.      AmFed is an insurer organized under California law and domiciled in the State of Texas with its principal place of business in the State of California.

6.      Upon information and belief, NUKA is a Colorado limited liability company with its principal place of business located in the State of Colorado.  NUKA's member is Peter Barsoom who is a citizen of the State of New York.  NUKA's registered agent is Peter Barsoom who can be served at 9690 Dallas St. Unit A, Commerce City, CO 80640-8484.

7.      Upon information and belief, GEORGE TSITIRIDIS ("TSITIRIDIS") is a natural person residing in the County of Cook, State of Illinois and is named as an interested party to be bound by the judgment herein.

8.     This is a diversity action seeking a declaration of no coverage under certain insurance policies issued to NUKA for a class action complaint filed in the Circuit Court of Cook County, Illinois.

## JURISDICTION AND VENUE

9.     This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332 because there is complete diversity and the amount in controversy, the combined liability limit of the subject insurance policies, exceeds $75,000.

10.     An actual controversy exists, and as such, pursuant to 28 U.S.C. § 2201, this Court has jurisdiction to adjudicate the rights and obligations of the parties.

11.     Venue is proper, pursuant to 28 U.S.C. § 1391, as Defendant NUKA conducts business in and Defendant TSITIRIDIS resides in Cook County, Illinois; NUKA's demand for a defense is to be provided in Cook County, Illinois; and the complained-of injury sustained by TSITIRIDIS for which NUKA seeks indemnification occurred in Cook County, Illinois.

## THE INSURANCE POLICIES

12.     AmFed issued two Commercial General Liability primary policies under policy numbers AFGL-CO-00641-00 and AFGL-CO-00641-01 with a combined liability period of December 29, 2020 to December 29, 2022, collectively, and a liability limit of $1,000,000 for each occurrence and $2,000,000 in the aggregate for each policy period ("Primary Policies"). ***See*** **Primary Policies attached hereto as Exhibit C**.

13.     AmFed also issued two Excess Policies under policy numbers AFXS-CO-00642-00 and AFXS-CO-00642-01 to NUKA effective from December 29, 2020 to December 29, 2022, collectively, with a liability limit of $4,000,000 (the "Excess Policies") in excess of the Primary Policies for each yearly policy period.  ***See*** **Excess Policies attached hereto as Exhibit D**.

14.     As used herein, the Primary Policies and the Excess Policies collectively are referred to as "the Policies."

15.     The Primary Policies' Coverage A provides that AmFed "will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. [AmFed has] the right and duty to defend the insured against any 'suit' seeking those damages." *See* **Exhibit C**.

16.     The Primary Policies' Coverage B provides that AmFed "will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies.  [AmFed has] the right and duty to defend the insured against any 'suit' seeking those damages." *See* **Exhibit C.**

17.     The Primary Policies contain the following definitions:

1.     "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:
   a.     Notices that are published include material placed on the Internet or on similar electronic means of communication; and
   b.     Regarding web sites, only that part of a web site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

3.     "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

14.     "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:
   a.     False arrest, detention or imprisonment;
   b.     Malicious prosecution;
   c.     The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;
   d.     Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

       e.       Oral or written publication, in any manner, of material that violates a person's right of privacy;

       f.       The use of another's advertising idea in your "advertisement"; or

       g.       Infringing upon another's copyright, trade dress or slogan in your "advertisement."

16.      "Products-completed operations hazard":

       a.    Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

          (1)       Products that are still in your physical possession; or

          (2)       Work that has not yet been completed or abandoned.

However, "your work" will be deemed completed at the earliest of the following times:

          (a)  When all of the work called for in your contract has been completed.

          (b)  When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

          (c)  When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

       b.  Does not include "bodily injury" or "property damage" arising out of:

          (1)  The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

          (2)  The existence of tools, uninstalled equipment or abandoned or unused materials; or

          (3)  Products or operations for which the classification, listed in the Declarations or in a policy Schedule, states that products completed operations are subject to the General Aggregate Limit.

17.      "Property damage" means:

       a.    Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

       b.    Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the same time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devises or any other media which are used with electronically controlled equipment.

18. "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

    a. An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

    b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

21. "Your Product"

    a. Means:

        (1) Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

            (a) You;

            (b) Others trading under your name; or

            (c) A person or organization whose business or assets you have acquired; and

        (2) Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

    b. Includes:

        (1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

        (2) The providing of or failure to provide warnings or instructions.

    c. Does not include vending machines or other property rented to or located for the use of others but not sold.

*See* **Exhibit C.**

19. The Policies also include the following exclusion:

Coverage B insurance does not apply to:

**g.      Quality or Performance of Goods – Failure to Conform to Statements**

"Personal and advertising injury" arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement".

*See* **Exhibit C.**

20.      The Policies also include the following endorsements:

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**EXCLUSION – PRODUCTS-COMPLETED OPERATIONS HAZARD**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

This insurance does not apply to "bodily injury" or "property damage" included within the "products-completed operations hazard".

\*\*\*

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**COMBINATION GL ENDORSEMENT – NON CONTRACTORS**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following are added to **SECTION I-COVERAGES, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE, subsection 2. Exclusions; and COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY,** subsection **2. Exclusions:** In consideration of the premium charged this insurance does not apply to, and there is no duty on us to defend you for, "bodily injury", "property damage", "personal injury", "advertising injury", medical payments or any injury, loss or damages, including consequential injury, disease or illness, alleged disease or illness, "suit", expense or any other damages, for past, present or future claims arising out of, caused by or contributed to:

\*\*\*

7

**C. Fines, Penalties, Punitive or Exemplary Damages**: by fines, penalties, punitive or exemplary damages.
Nor are any expenses or any obligation to share or repay such fines, penalties or damages with, or to, others.

\*\*\*

**F. Advertising Injury/Intellectual Property Infringement:** by intellectual property, proprietary property rights, patent, trademark and/or copyright infringement, misappropriation of trade secret and/or practice, piracy, fraudulent concealment, unjust enrichment, misrepresentation or negligent misrepresentation; and/or deceptive, false, fraudulent, misleading, unfair, unlawful or untrue business act or practice with respect to advertising.

\*\*\*

**H. Criminal, Fraudulent, Dishonest or Malicious Acts:** by criminal acts, fraudulent, dishonest, or malicious acts or omissions by any insured, any employee, leased worker, temporary worker, casual labor, 1099 worker, uninsured subcontractor or volunteer of any insured or anyone for whom you may be held liable.

***See* Exhibit C.**

21.     The Excess Policies provide that excess coverage "will follow the same provisions, exclusions and limitations that are contained in the applicable 'controlling underlying insurance', unless otherwise directed by this insurance." ***See* Exhibit D.**

22.     The insuring agreement of the Excess Policies states that AmFed "will pay on behalf of the insured the 'ultimate net loss' in excess of the 'retained limit' because of 'injury or damage' to which insurance provided under this Coverage Part applies." ***See* Exhibit D.**

23.     The Excess Policies provide the following definitions:

1.     "Controlling underlying insurance" means any policy of insurance or self-insurance listed in the Declarations under the Schedule of "controlling underlying insurance".

3.     "Event" means an occurrence, offense, accident, act, or other event, to which the applicable "controlling underlying insurance" applies.

8

4. "Injury or damage" means any injury or damage, covered in the applicable "controlling underlying insurance" arising from an "event".

5. "Retained limit" means the available limits of "controlling underlying insurance" applicable to the claim.

6. "Ultimate net loss" means the total sum, after reduction for recoveries, or salvages collectible, that the insured becomes legally obligated to pay as damages by reason of:

    a. Settlements, judgment, binding arbitration; or
    b. Other binding alternate dispute resolution proceeding entered into with our consent.

**See Exhibit D.**

24. The Declarations page of the Excess Policies identifies the Primary Policies as the "Controlling Underlying Insurance". **See Exhibit D.**

## THE UNDERLYING LAWSUIT

25. On or about June 29, 2022, TSITIRIDIS filed a class action complaint in the Circuit Court of Cook County, Illinois bearing Court No. 2022CH06258 against NUKA ENTERPRISES, LLC (the "Underlying Complaint"). **See Exhibit A.**

26. In the Underlying Complaint, TSITIRIDIS alleges NUKA manufactures, markets, advertises, distributes and sells a cannabis infused edible product, 1906 Edibles Midnight Drops ("Product") in Arizona, Colorado, Illinois, Massachusetts, Michigan and Oklahoma and that this cannabis product contains a chemical compound tetrahydropalmatine ("THP") that allegedly causes liver damage. **See Exhibit A.**

27. The Underlying Complaint alleges NUKA falsely marketed and advertised the Product had health, medicinal and therapeutic benefits but failed to warn consumers of the Product containing THP; failed to warn of possible liver damage when the Product is used and consumed as directed; and/or misrepresented the Product's safety in its design, labeling, marketing, and/or advertising. **See Exhibit A.**

28. The Underlying Complaint alleges TSITIRIDIS began purchasing and consuming the Product in or around June 2021 and consumed the Product, as directed on the product label, through October 2021 when he discovered he had sustained liver damage which he alleges is attributable to his consumption of the NUKA manufactured and marketed cannabis product. *See* **Exhibit A.**

29. The Underlying Complaint alleges the pleading was filed on behalf of all similarly situated persons who purchased and/or consumed the Product in Arizona, Colorado, Illinois, Massachusetts, Michigan, and Oklahoma. *See* **Exhibit A.**

30. The Underlying Complaint seeks compensatory, punitive, statutory and injunctive relief as a result of NUKA's design, manufacture and labeling of the Product which is allegedly distributed in Arizona, Colorado, Illinois, Massachusetts, Michigan and Oklahoma.

## <u>COUNT I – NO COVERAGE FOR PRODUCTS-COMPLETED OPERATIONS HAZARD</u>

1-30. AmFed repeats and realleges as though fully set forth herein, Paragraphs 1 through 30 of the General Allegations as Paragraphs 1 through 30 inclusive of this Count I and further states as follows:

31. The Primary Policies' Endorsement explicitly excludes coverage for "bodily injury" or "property damage" included within the "products-completed operations hazard".

32. The Primary Policies identifies the "products-completed operations hazard" as including all "bodily injury" and "property damage" occurring away from premises NUKA owns or rents and arising out of NUKA's "product" which is defined as any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by NUKA or containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products including warranties or representations as to the fitness, quality, durability, performance

or use of NUKA's "product" as well as NUKA's providing of or failure to provide warnings or instructions.

33.     The Underlying Complaint alleges the Product designed, manufactured and distributed by NUKA was designed and labeled to be a health product but was sold without a an appropriate warning.

34.     The Underlying Complaint alleges TSITIRIDIS suffered liver damage as a result of consuming the Product.

35.     The Underlying Complaint seeks to certify a class of all persons similarly situated that consumed the Product that did not include a warning label in Arizona, Colorado, Illinois, Massachusetts, Michigan, and Oklahoma.

36.     Pursuant to the terms, conditions and definitions of the Primary Policies, which are followed by the Excess Policies, the Product is considered NUKA's product which also includes NUKA's labeling of or failure to label the Product and is encompassed in the Primary Policies' definition of a products-completed operations hazard.

37.     The Products-Completed Operations Hazard Exclusion explicitly precludes coverage under the Commercial General Liability Part for any bodily injury included within the "products-completed operations hazard."  ***See* Exhibit C.**

38.     Coverage for the injury and damages alleged in the Underlying Complaint is precluded by the Products-Completed Operations Hazard Exclusion found in the Primary Policies and followed by the Excess Policies.

39.     Because the Primary Policies' Coverage B is not implicated, the Excess Policies – which follow the coverages of the Primary Policies – are likewise not applicable.  ***See* Exhibits C and D.**

WHEREFORE, Plaintiff, American Federation Insurance Company, respectfully requests this Honorable Court find and declare as follows:

a. The Products-Completed Operations Hazard exclusion found in the Primary Policies and followed by the Excess Policies applies to the allegations and claims of the Underlying Complaint;

b. PLAINTIFF has no duty to defend or indemnify NUKA under the Policies for the injury and damages alleged in the Underlying Complaint by reason of the Products-Completed Operations Hazard Exclusion; and

c. Any other relief this Court deems just and equitable.

## COUNT II – NO ADVERTISING INJURY

1-30. AmFed repeats and realleges as though fully set forth herein, Paragraphs 1 through 30 of the General Allegations as Paragraphs 1 through 30 inclusive of this Count II and further states as follows:

31. The Primary Policies provide coverage for certain advertising injuries that involve: (1) the oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; (2) the oral or written publication of material that violates a person's right of privacy; (3) the use of another's advertising idea in your "advertisement"; or (4) the infringement upon another's copyright, trade dress or slogan in the insured's "advertisement." *See* **Exhibit C.**

32. The Underlying Complaint does not allege: (1) NUKA's website or the Product's packaging or labeling  slanders or libels a person or organization or disparages a person's or organization's goods, products or services; (2) NUKA's website or the Product's packaging or labeling violates any person's right of privacy; (3) NUKA's website or the Product's packaging or labeling uses another's advertising idea in NUKA's "advertisement"; or (4) NUKA's website or

the Product's packaging or labeling infringes upon another's copyright, trade dress or slogan in NUKA's "advertisement". *See* **Exhibit A.**

33. None of the Primary Policies' enumerated advertising injuries that would be subject to coverage under the Policies are alleged in the Underlying Complaint and therefore the Primary Policies' Coverage B is not implicated by the allegations and claims raised in the Underlying Complaint. *See* **Exhibits A and C.**

34. Because the Primary Policies' Coverage B is not implicated, the Excess Policies – which follow the form and coverages of the Primary Policies – are likewise not applicable. *See* **Exhibit C.**

WHEREFORE, Plaintiff, American Federation Insurance Company, respectfully requests this Honorable Court find and declare as follows:

a. Coverage B of the Primary Policies is not implicated by any advertising allegations and claims raised in the Underlying Complaint;

b. The Excess Policies which follow the terms and coverages of the Primary Policies are likewise not implicated by any advertising allegations and claims raised in the Underlying Complaint;

c. PLAINTIFF has no duty under the Policies to defend or indemnify NUKA for any advertising claims and damages alleged in the Underlying Complaint; and

d. Any other relief this Court deems just and equitable.

## COUNT III – NO COVERAGE BY EXCLUSIONS CONTAINED IN THE POLICIES

1-30. AmFed repeats and realleges as though fully set forth herein, Paragraphs 1 through 30 of the General Allegations as Paragraphs 1 through 30 inclusive of this Count III and further states as follows:

31. Coverage under the Primary Policies' Coverage B pertaining to "Personal and Advertising Injury" is precluded by the Failure to Conform Exclusion which excludes coverage

for personal and advertising injury, as defined by the Primary Policies, arising out of the failure of goods, products or services to conform with any statement of quality or performance made in the insured's "advertisement". *See* **Exhibit C.**

33. The Underlying Complaint alleges NUKA falsely advertised that the Product was all-natural, "pharma-grade", safe and effective but the Product failed to conform to those statements. *See* **Exhibit A.**

34. To the extent the Underlying Complaint alleges NUKA's products failed to conform as advertised, such liability is precluded from coverage by the Failure to Conform Exclusion.

35. Because the Primary Policies' Coverage B is excluded, the Excess Policies – which follow the form and coverages of the Primary Policies – are likewise not applicable. *See* **Exhibits C and D.**

36. Coverage under the Primary Policies' Coverage A pertaining to "bodily injury" and Coverage B pertaining to "advertising injury" is precluded by the Criminal, Fraudulent, Dishonest or Malicious Acts Exclusion which precludes coverage for bodily injury and advertising injury arising out of, caused by or that contributed to "criminal acts, fraudulent, dishonest or malicious acts or omissions by any insured, any employee, leased worker, temporary worker, casual labor, 1099 worker, uninsured subcontractor or volunteer of any insured or anyone for whom you may be liable." *See* **Exhibit C.**

37. The Underlying Complaint alleges bodily injury and/or damages from the Product's advertising as a result of NUKA's deceptive misrepresentations and omissions of material fact that were "immoral", "unethical" and "unscrupulous" which deceived TSITIRIDIS and the class into

purchasing the Product that "they would not have purchased had they known the truth." ***See* Exhibit A.**

38.     To the extent that TSITIRIDIS and the class's bodily injury and damages arise out of, contribute to or are otherwise caused by NUKA's fraudulent or dishonest conduct, such injury and damages are precluded from coverage under the Policies.

39.     Because the Primary Policies' coverage is excluded by the Criminal, Fraudulent, Dishonest or Malicious Acts Exclusion, the Excess Policies – which follow the form and coverages of the Primary Policies – are likewise not applicable. ***See* Exhibits C and D.**

40.     Coverage under the Primary Policies' Coverage A pertaining to "bodily injury" and Coverage B pertaining to "advertising injury" is precluded by the Advertising Injury/Intellectual Property Infringement Exclusion which precludes coverage for bodily injury and advertising injury arising out of, caused by or that contributed to "deceptive, false, fraudulent, misleading, unfair, unlawful or untrue business act or practice with respect to advertising." ***See* Exhibit C.**

41.     The Underlying Complaint alleges bodily injury and damages as a result of NUKA's violations of certain consumer protection laws prohibiting "deceptive, unlawful, unfair, or fraudulent business acts or practices" related to its advertising and marketing of the Product. ***See* Exhibit A.**

42.     To the extent TSITIRIDIS and the class's bodily injury and damages arise out of, contribute to or are otherwise caused by NUKA's deceptive, fraudulent, misleading, unlawful, unfair or untrue business acts or practices with respect to its advertising or marketing of the Product, such injury and damages are precluded from coverage under the Policies.

43. Because the Primary Policies' coverage is excluded by the Advertising Injury/Intellectual Property Infringement Exclusion, the Excess Policies – which follow the form and coverages of the Primary Policies – are likewise not applicable. *See* **Exhibits C and D.**

WHEREFORE, Plaintiff, American Federation Insurance Company, respectfully requests this Honorable Court find and declare as follows:

a. The Failure to Conform Exclusion, as provided in the Primary Policies and followed by the Excess Policies, applies and preludes coverage for those allegations, claims or damages raised in the Underlying Complaint related to the Product's failure to conform to any representations made in NUKA's advertising and/or labeling of the Product;

b. PLAINTIFF has no duty under the Policies to defend or indemnify NUKA for any allegation, claims or damages raised in the Underlying Complaint that the Product failed to conform to NUKA's advertising and/or labeling of the Product;

c. The Criminal, Fraudulent, Dishonest or Malicious Acts Exclusion as provided in the Primary Policies and followed by the Excess Policies, applies and precludes coverage for those allegations, claims or damages raised in the Underlying Complaint related to NUKA's fraudulent and/or dishonest acts;

d. PLAINTIFF has no duty under the Policies to defend or indemnify NUKA for any allegations, claims or damages raised in the Underlying Complaint that arise out of, contribute to or are otherwise caused by NUKA's fraudulent and/or dishonest acts;

e. The Advertising Injury/Intellectual Property Infringement Exclusion as provided in the Primary Policies and followed by the Excess Policies, applies and preludes coverage for those allegations, claims or damages raised in the Underlying Complaint related to NUKA's deceptive, unlawful, unfair or untrue business acts or practices with respect to its advertising and/or marketing of the Product;

f. PLAINTIFF has no duty under the Policies to defend or indemnify NUKA for any allegations, claims or damages raised in the Underlying Complaint that arise out of, contribute to or are otherwise caused by NUKA's deceptive, unlawful, unfair or untrue business acts or practices with respect to its advertising and/or marketing of the Product; and

g. Any other relief this Court deems just and equitable.

## COUNT IV – NO COVERAGE FOR DAMAGES THAT ARISE OUTSIDE OF THE POLICY PERIOD

1-30.    AmFed repeats and realleges as though fully set forth herein, Paragraphs 1 through 30 of the General Allegations as Paragraphs 1 through 30 inclusive of this Count IV and further state as follows:

31.    The Policies have an effective period of December 29, 2020 to December 29, 2022. *See* **Exhibits C and D.**

32.    The Underlying Complaint identifies the class members as comprising all persons who purchased and/or consumed the Product in Arizona, Colorado, Illinois, Massachusetts, Michigan, and Oklahoma without any date limitation.

33.    To the extent it is determined any class members' injury or damage arose outside of the stated effective period, there is no coverage for those damages.

WHEREFORE, Plaintiff, American Federation Insurance Company, respectfully requests this Honorable Court find and declare as follows:

a.    The Policies only provide coverage for injury and damage that occur during the effective period of the Policies;

b.    PLAINTIFF has no duty to defend or indemnify NUKA for any injury and damages that arose outside of the effective dates of the Policies; and

c.    Any other relief this Court deems just and equitable.

## <u>COUNT V – NO COVERAGE FOR PUNITIVE DAMAGES</u>

1-30.    AmFed repeats and realleges as though fully set forth herein, Paragraphs 1 through 30 of the General Allegations as Paragraphs 1 through 30 inclusive of this Count V and further state as follows:

31.    The Primary Policies' "Combination GL Endorsement – Non Contractors" explicitly provides the Primary Policies do not apply to "bodily injury", "property damage",

"personal injury", "advertising injury", medical payments or any injury, loss or damages, including consequential injury, disease or illness, alleged disease or illness, "suit", expense or any other damages, for past, present or future claims arising out of, caused by or contributed to by fines, penalties, punitive or exemplary damages as well as any expenses or any obligation to share or repay such fines, penalties or damages with, or to, others. ***See* Exhibit C**.

32.     Because the Primary Policies' coverage for punitive damages is excluded by the Combination GL – Non Contractors Endorsement, the Excess Policies – which follow the form and coverages of the Primary Policies – likewise exclude coverage for punitive damages.  ***See*** **Exhibits C and D.**

32.     The Underlying Complaint seeks punitive damages on behalf of TSITIRIDIS as well as all those similarly situated.  **See Exhibit A.**

33.     The Policies explicitly preclude coverage for all punitive damages alleged in the Underlying Complaint. ***See* Exhibits C and D.**

WHEREFORE, Plaintiff, American Federation Insurance Company, respectfully requests this Honorable Court find and declare as follows:

a.     The Punitive Damages Exclusion contained in the Primary Policies' Combination GL Endorsement – Non Contractors and followed by the Excess Policies applies to the claims of punitive damages alleged in the Underlying Complaint;

b.     PLAINTIFF has no duty to indemnify NUKA under the Policies should any punitive damages ultimately be awarded in the Underlying Complaint by reason of the Punitive Damages Exclusion contained in the Combination GL Endorsement – Non Contractors; and

c.     Any other relief this Court deems just and equitable.

Date:  December 22, 2022

By:  *Danny L. Worker*
_____
    Attorney for Plaintiff, American Federation
    Insurance Company


Danny L. Worker (ARDC No. 06195554)
Charlotte S. Kormendy (ARDC No. 6256232)
LEWIS BRISBOIS BISGAARD & SMITH LLP
550 West Adams Street, Suite 300
Chicago, Illinois 60661
312.345.1718